UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JUN 1 1 2014
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **4:14CR00187 JAR/DDN** |
| ) | |
| v. ) | NO. |
| ) | |
| PAMELA TABATT, ) | Counts I, II, III, IV, V and VI |
| RICHARD GROSS, and ) | Counts I, II, IX and X |
| PAUL BERRA, JR., ) | Counts I, II, VII, VIII, IX and X |
| ) | |
| Defendants. ) | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

A.  Beginning sometime in 2011, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**PAMELA TABATT,
RICHARD GROSS, and
PAUL BERRA, JR.,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, United States Code, Sections 841(a)(1) and 813.

B.   MANNER AND MEANS OF THE CONSPIRACY

1.   It was part of the drug-trafficking conspiracy that the defendants RICHARD GROSS and PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC, would import chemicals from other countries, including China, to various locations in the United States.

2.   It was further part of the drug-trafficking conspiracy that the imported chemicals would often have misleading labels, manifests or declarations regarding contents, in order to avoid detection by law enforcement officers.

3.   It was further part of the drug-trafficking conspiracy that defendants RICHARD GROSS and PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC, would use the imported chemicals to manufacture synthetic cathinones and synthetic cannabinoids.

4.   It was further part of the drug-trafficking conspiracy that defendants RICHARD GROSS, PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC, and others would mix the imported chemicals with cutting agents, such as a laxative powder, to manufacture the synthetic cathinones.

5.   It was further part of the drug-trafficking conspiracy that defendants RICHARD GROSS, PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC, and others would liquefy the chemicals through a process of adding denatured alcohol and/or acetone.

6.   It was further part of the drug-trafficking conspiracy that defendants RICHARD GROSS, PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC, and others would spray the liquefied chemicals on herbs, such as Damiana, creating synthetic cannabinoids.

7.   It was further part of the drug-trafficking conspiracy that the synthetic chemicals would contain controlled substances and/or controlled substance analogues, including, but not limited to, the following:

      a)    Methylone;

      b)    2-(Methylamino)-1-phenyl-pentane-1-one Hydrochloride, also known as "Pentedrone HCl;"

      c)    alpha-Pyrrolidinovalerophenone, also known as "alpha-PVP;"

      d)    1-Pentyl-3-(1-naphthoyl) indole, also known as "JWH-018;" and

      e)    1-(5-Fluoropentyl)1H-indol-3-(2,2,3,3-tetramethylcyclopropyl)indole, also known as "XLR-11."

8.    It was further part of the drug-trafficking conspiracy that the defendants would periodically change chemicals in an attempt to avoid federal drug scheduling regulations while still producing synthetic drugs which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.

9.    It was further part of the drug-trafficking conspiracy that defendants RICHARD GROSS; PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC; PAMELA TABATT, and others would package and/or sell the synthetic drugs, consisting of controlled substances and controlled substance analogues, into small plastic containers (cathinones) with names including, but not limited to: "Fresh," "Fresh2," "Limited," "Starry Nights," "Twisted," "Sunny Days," "Pump It," "Blitz," and "Full Throttle," or packages (cannabinoids) with names including, but not limited to: "Mega Kush," "Bayou Blaster," "Bunker Buster," "Avalon," "Lights Out," "Golden Leaf," "Pirates Booty," for retail sale at, but not limited to, TABATT-owned stores.

10.    It was further part of the drug-trafficking conspiracy that the aforementioned synthetic drugs were intended for human consumption although they carried a "not for human consumption" label in an attempt to thwart drug-trafficking laws.

11. The synthetic products would be consumed primarily by smoking or snorting the substance in order to obtain a "high."

12. It was further part of the drug-trafficking conspiracy that the organization set up locations for manufacturing and/or packaging the synthetic drugs including a TABATT-owned storefront in St. Louis County, Missouri; and a Strictly Wholesale-owned property in Carrollton, Illinois.

13. It was further part of the drug-trafficking conspiracy that defendants RICHARD GROSS, PAUL BERRA, JR., d/b/a Strictly Wholesale, LLC, and others had an exclusive agreement to sell packaged synthetic drugs to defendant PAMELA TABATT, who, in turn, would distribute the packaged synthetic drugs at her two (2) retail establishments: Smoke Sensations and South 94 Bait and Tackle Trading Post.

All in violation of Title 21, United States Code, Section 846.

## COUNT II

The Grand Jury further charges that:

A. Beginning sometime in 2011, and continuing to on or about the date of this Indictment, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**PAMELA TABATT,
RICHARD GROSS, and
PAUL BERRA, JR.,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, with the intent to defraud and mislead, to:

a) cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a) and 333(a)(2);

4

    b)    receive and cause the receipt of misbranded drugs in interstate commerce and to deliver and proffer delivery thereof for pay or otherwise, in violation of Title 21, United States Code, Sections 331(c) and 333(a)(2); and

    c)    commit and cause to be committed acts with respect to drugs, while such drugs were held for sale after being shipped in interstate commerce that resulted in such drugs being misbranded, in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

### B. MANNER AND MEANS OF THE CONSPIRACY

1. The allegations set forth in paragraphs 1 through 13 of the Manner and Means section of Count I are re-alleged and fully incorporated herein.

2. It was further part of the misbranding conspiracy that defendants falsely and misleadingly referred to their synthetic drug products as "scouring powder," "novelty products," "incense," "research chemicals," and other erroneous names when, in fact, such products were synthetic drugs intended for consumption in order to obtain a physiological effect of a "high."

3. Each of the drugs was misbranded in at least one of the following respects:

    a)    the synthetic drugs' packaging did not bear adequate directions for use;

    b)    the synthetic drugs were falsely labeled in a manner indicating they were not for human consumption when, in fact, the synthetic drugs were intended for human consumption;

    c)    the synthetic drugs' packaging failed to accurately identify the contents and intended use;

      d)    the synthetic drugs' packaging did not bear a label containing the name and place of the business, the manufacturer, packer, or distributor; and

      e)    the synthetic drugs' labeling did not include adequate warnings against unsafe dosages, methods, or durations of administration or application, in such manner and form as were necessary for the protection of users of the drugs.

      4.    Defendants intended to defraud and mislead government authorities regarding the products' status as synthetic drugs with the purpose of avoiding regulation over the drugs and enabling themselves to continue selling the drugs in exchange for money.

    B.    OVERT ACTS

      1.    Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to, the following:

      a)    shipped/transported misbranded synthetic drugs to South 94 Bait and Tackle Trading Post, located in St. Charles County, Missouri;

      b)    shipped/transported misbranded synthetic drugs to Smoke Sensations Nights of Rave, located in St. Louis, County, Missouri;

      c)    sold misbranded synthetic drugs at South 94 Bait and Tackle Trading Post, located in St. Charles County, Missouri; and

      d)    sold misbranded synthetic drugs at Smoke Sensations Nights of Rave, located in St. Louis County, Missouri.

All in violation of Title 18, United States Code, Section 371.

## COUNT III

The Grand Jury further charges that:

On or about July 30, 2012, in the Eastern District of Missouri,

**PAMELA TABATT,**

the defendant herein, (a) knowingly conducted and attempted to conduct a monetary transaction involving a financial institution, to wit: the purchase of a Fifth Third Bank cashier's check, number 20185245, in the amount of $1,000,000.00, payable to Nationwide Mutual Insurance Company; (b) that the monetary transaction was of a value greater than $10,000.00; and (c) that the money involved in the monetary transaction involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 813, as described in Count I.

All in violation of Title 18, United States Code, Section 1957.

### COUNT IV

The Grand Jury further charges that:

On or about August 8, 2012, in the Eastern District of Missouri,

**PAMELA TABATT,**

the defendant herein, (a) knowingly conducted and attempted to conduct a monetary transaction involving a financial institution, to wit: the purchase of a Fifth Third Bank cashier's check, number 20239480, in the amount of $1,000,000.00, payable to Integrity Life Insurance Company; (b) that the monetary transaction was of a value greater than $10,000.00; and (c) that the money involved in the monetary transaction involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in

violation of Title 21, United States Code, Sections 846, 841(a)(1), and 813, as described in Count I.

All in violation of Title 18, United States Code, Section 1957.

## COUNT V

The Grand Jury further charges that:

On or about May 15, 2013, in the Eastern District of Missouri,

**PAMELA TABATT,**

the defendant herein, (a) knowingly conducted and attempted to conduct a monetary transaction involving a financial institution, to wit: the purchase of a Fifth Third Bank cashier's check, number 21585358, in the amount of $1,000,000.00, payable to Integrity Life Insurance Company; (b) that the monetary transaction was of a value greater than $10,000.00; and (c) that the money involved in the monetary transaction involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 813, as described in Count I.

All in violation of Title 18, United States Code, Section 1957.

## COUNT VI

The Grand Jury further charges that:

On or about May 15, 2013, in the Eastern District of Missouri,

**PAMELA TABATT,**

the defendant herein, (a) knowingly conducted and attempted to conduct a monetary transaction involving a financial institution, to wit: the purchase of a Fifth Third Bank cashier's check, number 21585361, in the amount of $1,000,000.00, payable to Pacific Life Insurance Company; (b) that the monetary transaction was of a value greater than $10,000.00; and (c) that the money involved in the monetary transaction involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 813, as described in Count I.

All in violation of Title 18, United States Code, Section 1957.

### COUNT VII

The Grand Jury further charges that:

On or about July 28, 2011, in the Eastern District of Missouri,

### PAUL BERRA, JR.,

the defendant herein, (a) knowingly conducted and attempted to conduct a monetary transaction involving a financial institution, to wit: conducted a wire transfer in the amount of $255,100.00 from Bank of America Strictly Wholesale checking account number 354006928955 to Continental Title Co.; (b) that the monetary transaction was of a value greater than $10,000.00; and (c) that the money involved in the monetary transaction involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 813, as described in Count I.

All in violation of Title 18, United States Code, Section 1957.

## COUNT VIII

The Grand Jury further charges that:

On or about September 19, 2011, in the Eastern District of Missouri,

**PAUL BERRA, JR.,**

the defendant herein, (a) knowingly conducted and attempted to conduct a monetary transaction involving a financial institution, to wit: conducted a wire transfer in the amount of $198,199.90 from Bank of America Strictly Wholesale checking account number 354006928955 to Integrity Title Co.; (b) that the monetary transaction was of a value greater than $10,000.00; and (c) that the money involved in the monetary transaction involved the proceeds of a specified unlawful activity, to wit: conspiracy to distribute and possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues for human consumption, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 813, as described in Count I.

All in violation of Title 18, United States Code, Section 1957.

## COUNT IX

The Grand Jury further charges that:

Beginning sometime in 2011, and continuing to on or about July of 2013, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**RICHARD GROSS and
PAUL BERRA, JR.,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to import Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption as provided in Title 21, United States Code, Section 813, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960(a)(1).

All in violation of Title 21, United States Code, Section 963, and punishable under Title 21, United States Code, Section 960(b)(3).

## COUNT X

The Grand Jury further charges that:

A.     Beginning sometime in 2011, and continuing to on or about July 2013, with the exact dates unknown, in the Eastern District of Missouri and elsewhere,

**RICHARD GROSS and
PAUL BERRA, JR.,**

the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to receive, conceal, buy, sell, or in any manner facilitate the transportation of merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, to wit: merchandise imported with false, forged, or fraudulent invoice or other document or paper, in violation of Title 18, United States Code, Section 545.

B.     OVERT ACTS

1.     Defendants committed overt acts in furtherance of the conspiracy, including, but not limited to, causing the shipment of chemicals and controlled substance

analogues from the Country of China into the United States, including, but not limited to the following:

| DATE | ADDRESSEE | MANIFESTED CONTENTS | LAB ANALYSIS |
|---|---|---|---|
| 04/24/2012 | Paul BERRA, Strictly Wholesale | Detergent powder | alpha-PVP |

2.  Defendants would transport the received chemicals and controlled substance analogues to locations in Missouri and/or Illinois for purposes of manufacturing synthetic drugs.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.  Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 813, as set forth in Count I of this Indictment, the defendants PAMELA TABATT, RICHARD GROSS, and PAUL BERRA, JR., shall forfeit to the United States of America:

    a)  any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violations; and

    b)  any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses.

Specifically subject to forfeiture is a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

Specific property subject to forfeiture includes, but is not limited to, the following:

(a) $9,242.75 U.S. Currency;

(b) $82,939.00 U.S. Currency;

(c) $3,437.00 U.S. Currency;

(d) Approximately $99,849.34 from First Community Credit Union, Acct. #920301106;

(e) Approximately $85,592.33 from First Community Credit Union, Acct. #920301120;

(f) Approximately $148,962.31 from First Community Credit Union, Acct. #920301113;

(g) Approximately $137,883.46 from First Community Credit Union, Acct. #920301108;

(h) Approximately $84,942.94 from First Community Credit Union, Acct. #920304510;

(i) Approximately $85,059.82 from First Community Credit Union, Acct. #920304515;

(j) Approximately $77,328.14 from First Community Credit Union, Acct. #920301118;

(k) Approximately $68,996.56 from First Community Credit Union, Acct. #920301122;

(l) Approximately $325,817.63 from Fifth Third Bank, Acct. #7410358233;

(m) Approximately $15,112.84 from Fifth Third Bank, Acct. #7410277995;

(n) Approximately $391,394.48 from Fifth Third Bank, Acct. #7410440866;

(o) 2007 Chevrolet Trailblazer SS, VIN: 1GNET13H072110394;

(p) 2012 Ducati Panigale 1199, VIN: ZDM14BPW1CB005588;

(q) 2007 Ford F-250 Pickup, VIN: 1FTSW21P77EB13455;

(r) 2008 Ford F450 Pickup Truck, VIN: 1FTXW43R48EA69349;

(s) 2011 Chevrolet Traverse LTZ, VIN: 1GNKVLED6BJ211957;

(t) Approximately $990,213.08 from Pacific Life Insurance Company, Acct. #FP13001038;

(u) Approximately $989,122.36 from Integrity Life Insurance Company, Acct. #2130301781;

(v) Approximately $968,185.49 from Integrity Life Insurance Company, Acct. #2130280221;

(w) Approximately $968,179.77 from Nationwide Mutual Insurance Company, Acct. #03-1300976;

(x) Approximately $87,540.30 from Fifth Third Securities, Acct. #072-059846;

(y) Real Property at 2043 Lick Creek Drive, Wentzville, Missouri;

(z) Real Property at 237 Split Rail Drive, Wentzville, Missouri;

(aa) Real Property at 1801 Thoele Road, St. Peters, Missouri;

(bb) Real Property at 114 Brookfield Boulevard, Wentzville, Missouri;

(cc) Real Property at 1029 Highway 47 East, Troy, Missouri;

(dd) Real Property at 13 Cove Trail, New Florence, Missouri;

(ee) Real Property at Rural Route 2, Box 35A, Carrolton, Illinois;

      (ff)    Real Property at 25333 Cheyenne Lane, Warrenton, Missouri;

      (gg)    Real Property directly south and bordering the Real Property and residence of 25333 Cheyenne Lane, Warrenton, Missouri; and

      (hh)    Real Property at 241 McClay Road, Winfield, Missouri.

2.    If any of the property described above, as a result of any act or omission of the defendants:

      a)    cannot be located upon the exercise of due diligence;

      b)    has been transferred or sold to, or deposited with, a third party;

      c)    has been placed beyond the jurisdiction of the court;

      d)    has been substantially diminished in value; or

      e)    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

3.    Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1957, as set forth in Counts III, IV, V, and VI of the Indictment, the defendant PAMELA TABATT shall forfeit to the United States of America any property, real or personal, involved in said offense or any property, real or personal, traceable to such property.

      Specifically subject to forfeiture is a sum of money equal to the total value of property, real or personal, involved in said offense and all property, real or personal, traceable to such violations.

15

4.       Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1957, as set forth in Counts VII and VIII of the Indictment, the defendant PAUL BERRA, JR., shall forfeit to the United States of America any property, real or personal, involved in said offense or any property, real or personal, traceable to such property.

Specifically subject to forfeiture is a sum of money equal to the total value of property, real or personal, involved in said offense and all property, real or personal, traceable to such violations.

5.       Pursuant to Title 21, United States Code, Section 853(a) and 970, upon conviction of an offense in violation of Title 21, United States Code, Sections 952, 960, and 963, as set forth in Count IX of this Indictment, the defendants RICHARD GROSS and PAUL BERRA, JR., shall forfeit to the United States of America:

a)    any property, constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violations; and

b)    any property used, or intended to be used, in any manner or part to commit or to facilitate the commission of such offenses.

Specifically subject to forfeiture is a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

6.       Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate section Title 18, United States Code, Section 545, in violation of Title 18, United States Code, Section 371, as set forth in Count X of the Indictment, the defendants RICHARD GROSS and PAUL BERRA, JR.,

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.

Specifically subject to forfeiture is a sum of money equal to the total property constituting, or derived from, any proceeds obtained directly or indirectly as a result of such violations.

A TRUE BILL.


_____
FOREPERSON


RICHARD G. CALLAHAN
United States Attorney


_____
JAMES C. DELWORTH, #29702MO
ERIN O. GRANGER, #53593MO
Assistant United States Attorneys